UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHRISTOPHER EUGENE WILLIAMSON, <br><br> Plaintiff, <br><br> v. <br><br> ANALYTICS CONSULTING LLC, *et al.*, <br><br> Defendants. | Civil Action No. 24-1403 (JEB) |

## MEMORANDUM OPINION

*Pro se* Plaintiff Christopher Eugene Williamson, an Instacart driver, brought this action to recover a $300 payment that he believes the District of Columbia owes him following a settlement between the District and Instacart. Williamson filed this suit against Analytics Consulting LLC (the Settlement Administrator) as well as the D.C. Office of Consumer Protection, the D.C. Office of the Chief Financial Officer, and the D.C. Office of Tax and Revenue. He alleges violations of his Fifth Amendment due-process rights under 42 U.S.C. § 1983 and Federal Rule of Civil Procedure 5.1, and he also asserts claims for common-law negligence and breach of contract. Analytics and the District now separately move to dismiss this suit under Federal Rule of Civil Procedure 12(b)(6).

The Court not only cannot fathom why Williamson would pay a $405 filing fee to recover $300, but it also holds that his federal causes of action are infirm. He did not receive the $300 payment only because he owed a tax debt to the City of over $5,000. The Court will thus grant the Motions to Dismiss as to his federal causes of action and decline to exercise supplemental jurisdiction over the remaining ones.

**I.     Background**

The Court, as it must in a case brought by a *pro se* plaintiff, draws on the facts as pled in both the Complaint and Plaintiff's Oppositions to the Defendants' Motions to Dismiss, taking them to be true.  See Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113–14 (D.C. Cir. 2000); Brown v. Whole Foods Market Grp., Inc., 789 F.3d 146, 152 (D.C. Cir. 2015) (courts should consider "the facts alleged in all of [a *pro se* plaintiff's] pleadings" when evaluating motion to dismiss).  In 2020, the D.C. Attorney General sued Instacart for falsely leading consumers to believe that service-fee charges on orders placed between 2016 and 2018 went directly to delivery drivers, as opposed to Instacart itself.  See ECF No. 1 (Compl.), ¶¶ 13–14.  Pursuant to the resulting settlement, Instacart paid the District $1.8 million.  Id., ¶ 14.  The Office of Consumer Protection, a branch of the D.C. Attorney General's Office, put most of those monies into the Attorney General Restitution Fund, from which local Instacart drivers who made a delivery between October 1, 2016, and April 30, 2018, could seek compensation.  Id., ¶¶ 15, 17; see also ECF No. 14 (D.C. MTD) at 2.  The City hired Analytics as the Settlement Administrator for the Fund, and, in that role, Analytics created a website explaining the settlement and communicated with the public about Fund awards.  See D.C. MTD at 2–3; see also Compl., ¶ 31.

Williamson delivered more than 1,800 Instacart orders throughout the District during the relevant period, and he timely applied to the Fund in February 2023.  See Compl., ¶¶ 20, 25.  He was approved for a $300 award with a letter clearly stating: "If you owe taxes or child support to the District, your Instacart payment will be used to pay your debt.  If your Instacart payment is more than the amount you owe to the District, you will get the remainder of the payment."  Id., ¶¶ 28, 39.  In preparation for payment, Plaintiff sent a W-9 form to the District on July 10, 2023.

2

Id., ¶ 28. Four months later and still empty handed, Williamson became aware that others who qualified for an award from the Fund were receiving their payments. Id., ¶ 30. He thus wrote to the Office of the Claims Administrator regarding the status of his payment and was told three days later that he would not be issued an award because he owed $5,010.27 in unpaid taxes to the District and could only receive his money once the debt was paid. Id., ¶¶ 31–32. He then brought this suit.

Williamson's Complaint filed on May 15, 2024, contains four counts, the first two of which assert under 42 U.S.C. § 1983 and Federal Rule of Civil Procedure 5.1, respectively, that the Fund violated his Fifth Amendment due-process rights by failing to provide him the settlement award. Id., ¶¶ 40–48. Count III alleges common-law negligence, id., ¶¶ 49–58, and Count IV alleges breach of contract. Id., ¶¶ 59–62. He seeks declaratory and injunctive relief, compensatory and punitive damages, and attorney fees (even though he is representing himself). Id. at 13.

Both the District and Analytics have now separately moved to dismiss all four counts of the Complaint.

**II.    Legal Standard**

Defendants' Motions to Dismiss invoke Federal Rule of Civil Procedure 12(b)(6). In evaluating such motions to dismiss, courts must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow, 216 F.3d at 1113 (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570) — that is, the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

The court need not accept as true "a legal conclusion couched as a factual allegation," Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)), nor "inferences . . . unsupported by the facts set out in the complaint." Id. (quoting Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994)). And it may consider not only "the facts alleged in the complaint," but also "any documents either attached to or incorporated in the complaint[,] and matters of which [courts] may take judicial notice." Equal Employment Opportunity Commission v. St. Francis Xavier Parochial School, 117 F.3d 621, 624 (D.C. Cir. 1997).

**III.   Analysis**

As Defendants accurately point out, Plaintiff's Complaint does not sufficiently establish any federal cause of action. After thus dismissing the first two counts, the Court will decline to exercise supplemental jurisdiction over the common-law claims.

   A.   Section 1983

To state a claim under § 1983, Williamson must plausibly allege that a person acting under color of state law caused a violation of one of his constitutional rights. See West v. Atkins, 487 U.S. 42, 48 (1988) (§ 1983 elements); Bolling v. Sharpe, 347 U.S. 497, 499 (1954) (Fifth Amendment right to due process applies in District of Columbia). Although Analytics vigorously argues that, as a private contractor, it did not act under color of state law, see ECF No. 10 (A.C. MTD) at 5–6, the Court can sidestep that question because it finds no constitutional violation occurred here.

4

Williamson alleges that his Fifth Amendment due-process rights were violated when the District withheld the $300 settlement award — which he claims is his property — without giving him a means of redress. See ECF No. 18 (Opp. to D.C. MTD) at 19. While the Fifth Amendment states that no one shall be "deprived of life, liberty, or property without due process of law," Defendants assert that no constitutional violation occurred because Plaintiff does not have a property interest in any potential award from the Fund. See D.C. MTD at 5–7; A.C. MTD at 6–8. The District observes that to have a constitutionally protected interest in property, "a person must have a legitimate claim of entitlement to it, beyond an abstract need or desire." D.C. MTD at 5 (cleaned up) (quoting Langeman v. Garland, 88 F.4th 289, 295 (D.C. Cir. 2023)); see also A.C. MTD at 6–7. To create a "legitimate claim of entitlement," it continues, "the source of the interest 'must place substantive limitations on official discretion,'" and "'contain explicitly mandatory language' such as 'specific directives' that if certain conditions are met, 'a particular outcome must follow.'" D.C. MTD at 5–6 (quoting Langeman, 88 F.4th at 295).

Williamson counters that the "approval of his claim created a reasonable expectation of receiving the award," and that "expectation constitutes a property interest protected by the Fifth Amendment." Opp. to D.C. MTD at 19–20. He maintains that the District did not have discretion in administering the awards because D.C. Code § 1-301.86c, the statute governing the Fund, instructs the City to "determine whether the individual owes any amount to the District and deduct the amount owed from the award to the individual, if any." Id. at 5–6, 10–12 (quoting D.C. Code § 1-301.86c(d)). While the District may have had discretion on how to allocate the funds according to the terms of the settlement, Williamson argues, once it opted to distribute relief to drivers through the Fund, it was required to strictly adhere to "specific criteria

5

for eligibility and disbursement, which limits the District's discretion." Id. at 20; see also ECF No. 16 (Opp. to A.C. MTD) at 18.

Regardless of what discretion the Code provides, it also contains mandatory language preventing the District from giving an award to any claimant who owes taxes in an amount that is greater than or equal to his award. See D.C. Code § 1-301.86c(d). As a result, Plaintiff, who has more than $5,000 in tax debt, is not even eligible for an award, let alone entitled to it.

In addition, Williamson's construction of the City's discretion is too narrow. The Code mandates that D.C. will "conduct a claims procedure to: [l]ocate each person entitled to receive an award[] and [d]istribute the awarded amounts to these individuals, minus any amounts deducted" based on debts owed by the individual to the District. See id., § 1-301.86c(e)(1)(A)–(B). The determination of who is entitled to receive an award and the amount of each award, however, is dictated by the court settlement, which does not provide guidance on those issues. See id., § 1-301.86c(c)(1); Compl., Exh. 1 (Consent Order and Judgment, Superior Court of the District of Columbia, 2020 CA 003777B), ¶ 14. These decisions are thus left entirely up to the City. While some government benefits are so automatic that they amount to a property interest, see Goldberg v. Kelly, 397 U.S. 254, 261–62 (1970), that is simply not the case here. As there is no property interest at stake in this case, the Court need not determine if the process the District offered to claimants was sufficient.

Although the Complaint characterizes this count as his being deprived of due process to obtain his $300 award, Williamson's Opposition at times recasts this violation as his lacking process to challenge the underlying tax debt. See Opp. to D.C. MTD at 19. Even if the Court could consider this new argument, Williamson did have sufficient procedures to challenge his debt through the D.C. Office of Tax and Revenue and in fact used such procedures before

bringing this lawsuit.  See Compl., Exh. 5 (November 27, 2023, Email to Instacart Workers in D.C. Refunds from Christopher Eugene Williamson) at 1.

    B.  FRCP 5.1

Plaintiff oddly invokes Federal Rule of Civil Procedure 5.1 as the basis for Count II.  See Compl., ¶¶ 45–48.  Rule 5.1 dictates that to challenge the constitutionality of a federal or state statute, a party must file a notice of constitutional question and serve the notice on the Attorney General of the United States or a state attorney general.  Even were there a constitutional violation here, Analytics points out that a procedural rule does not create a cause of action to challenge the constitutionality of a statute.  See A.C. MTD at 8.  The Court agrees.  Parties must have a private cause of action to sue, and the Federal Rules of Civil Procedure do not otherwise provide one.  See Shahin v. Darling, 606 F. Supp. 2d 525, 539 (D. Del. 2009) ("[T]he federal rules of civil procedure do not create a private cause of action."); Talley v. Pa. Dept. of Corr., 791 F. App'x 291, 294 n.1 (3d Cir. 2019) (same); CSX Transportation, Inc. v. Gilkison, 406 F. App'x 723, 737 (4th Cir. 2010) (Davis, J., concurring) (same).  Count II will thus be dismissed.

    C.  Common-Law Claims

The federal question raised in Counts I and II was the sole basis for the Court's subject-matter jurisdiction, as it does not have diversity jurisdiction where the amount in controversy does not exceed $75,000 (despite what Plaintiff contends).  As a result, the Court may hear Counts III and IV only if it opts to exercise supplemental jurisdiction over them.  See 28 U.S.C. § 1367(c)(3).  Federal district courts are given supplemental (or "pendent") jurisdiction over state claims that "form part of the same case or controversy" as federal claims over which they have original jurisdiction.  See id. § 1367(a).  By the same token, courts "may decline to exercise supplemental jurisdiction over [such] claim[s] . . . if . . . the district court has dismissed all claims

7

over which it has original jurisdiction." Id. § 1367(c). The decision of whether to exercise supplemental jurisdiction where a court has dismissed all federal claims is left to the court's discretion, as "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966). When deciding whether to exercise supplemental jurisdiction over state claims, federal courts should consider "judicial economy, convenience, fairness, and comity." Shekoyan v. Sibley Int'l, 409 F.3d 414, 424 (D.C. Cir. 2005) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)). When all federal claims are eliminated before trial, however, "the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." Id. (quoting Carnegie-Mellon Univ., 484 U.S. at 350 n.7); see also Edmondson & Gallagher v. Alban Towers Tenants Ass'n, 48 F.3d 1260, 1267 (D.C. Cir. 1995) (finding discretion set out in Carnegie-Mellon University "unaffected by the subsequent enactment of 28 U.S.C. § 1367(d), in the Judicial Improvements Act of 1990").

Here, the factors weigh against exercising supplemental jurisdiction. This case has not progressed in federal court past Defendants' Motions to Dismiss, and the Court has developed no particular familiarity with the issues presented. Cf. Schuler v. PricewaterhouseCoopers, LLP, 595 F.3d 370, 378 (D.C. Cir. 2010) (finding that district court could appropriately retain pendent jurisdiction over state claims where it had "invested time and resources" in case) (quoting Osborn v. Haley, 549 U.S. 225, 245 (2007)). The Court can thus conceive of no undue inconvenience or unfairness to the litigants that would result from such a decision. Finally, Plaintiff will not be prejudiced because 28 U.S.C. § 1367(d) tolls the statute of limitations while the case is in federal court and for at least 30 days thereafter. See Shekoyan, 409 F.3d at 419, 424 (affirming district court finding that because of this tolling, dismissal of pendent state claims

"will not adversely impact plaintiff's ability to pursue his District of Columbia claims in the local court system") (cleaned up).  The Court, therefore, will dismiss the common-law claims without prejudice, and Plaintiff may bring such claims, if not barred, in the appropriate local court.

## IV.     Conclusion

For the foregoing reasons, the Court will grant Defendants' Motions to Dismiss.  A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  August 29, 2024